IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| JAMES WATSON,<br><br>                Plaintiff,<br><br>        vs.<br><br>STATE OF MONTANA, MONTANA<br>DEPARTMENT OF CORRECTIONS,<br>MONTANA STATE PRISON, WARDEN<br>MICHAEL MAHONEY, UNIT MANAGER<br>PAUL LUCIER, DAVID SCHAEFER,<br>BOB JONES, and JOHN and JANE<br>DOES 1-40,<br><br>                Defendants. | CV-04-16-H-CSO<br><br><br><br>**ORDER DENYING WATSON'S<br>MOTION FOR PARTIAL SUMMARY<br>AND GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT** |

Now before the Court are:

(1)  Plaintiff James Watson's ("Watson") Motion for Partial Summary Judgment (*Court's Doc. No. 70*); and

(2)  Defendants State of Montana ("State"), Montana Department of Corrections ("MDC"), Montana State Prison ("MSP"), Warden Michael Mahoney ("Mahoney"), Unit Manager Paul Lucier ("Lucier"), David Schaefer ("Schaefer"), and Bob Jones' ("Jones")(herein collectively referred to as "Defendants") Motion for Summary Judgment. *Court's Doc. No. 66*.

Having carefully reviewed the parties' filings and considered the arguments advanced in their briefs, the Court is prepared to rule.

I.    <u>BACKGROUND</u>[1]

    A.    **PROCEDURAL**

    This lawsuit was originally filed in Montana's Thirteenth Judicial District Court, Yellowstone County, on April 1, 2002, on behalf of Watson, Mark Walker ("Walker"), and Mark Wearley ("Wearley").  *Court's Doc. No. 3.*  On December 12, 2003, Plaintiffs filed an Amended Complaint.  *Court's Doc. No. 12.* The Amended Complaint alleges the following claims: (1) a violation of Plaintiffs' fundamental right to be free from cruel and unusual punishment found in the Eighth Amendment to the United States Constitution (*Amend. Compl.* at ¶¶ 2, 36-37); (2) a violation of Plaintiffs' state constitutional rights found in Article II, §§ 4, 22, 28 and 34 of the Montana Constitution (<u>id</u>. at ¶¶ 36-37); (3) negligent failure to provide adequate mental health care (<u>id</u>. at ¶¶ 40-43); (4) negligence *per se* claims for violations of § 20.27.254 of the Administrative Rules of Montana and Mont. Code Ann. §§ 46-18-225, 45-5-201, 45-5-203, 45-5-204, 49-3-205, 49-3-203, 49-3-209, 49-2-308, 49-1-101, 49-1-102, 49-2-301, and 49-1-201 (<u>id</u>. at ¶¶ 44-47); (5) violation of the American with Disabilities Act ("ADA") (<u>id</u>. at ¶¶ 3, 48-49); and (6) violation of 42 U.S.C. § 1983 ("§ 1983").  <u>Id</u>. at ¶¶ 50-52. Plaintiffs request past and future special and general damages;

---

[1] The procedural and factual background are thoroughly detailed in the record, and are well known to the parties.  Accordingly, this summary is intended only to provide a basic background.

costs, punitive damages, attorney fees and costs, an injunction
to prevent the type of conduct alleged in their Amended
Complaint, "a declaration of minimum requirements, levels of
services, and qualifications of personnel commensurate to the
needs of the classes," an order certifying this claim as a class
action, and "for other legal or equitable relief as the Court
deems just and proper."  Id. at pgs. 9-10.[2]

This matter was removed to this Court on April 29, 2004.
Court's Doc. No. 1.  Subsequent to removal, and before any
Defendants appeared, Walker and Wearley filed their Notice of
Rule 41 [Fed. R. Civ. P.] Dismissal, dismissing their claims
against Defendants without prejudice.  Court's Doc. No. 21.
Defendants filed their Answer, Affirmative Defenses, and Demand
for Jury Trial on May 7, 2004.  Court's Doc. No. 22.

On June 14, 2004, upon written consent of the parties, this
case was assigned to the undersigned for all purposes.  Court's
Doc. No. 28.  Watson filed a motion to amend his Amended
Complaint to add an additional Plaintiff and identify additional
Defendants on January 18, 2005.  Court's Doc. No. 48.  The Court
denied this motion with leave to renew.  Court's Doc. No. 49.
No subsequent motion to amend was filed.

Defendants moved for summary judgment on March 24, 2006.

---

[2] The requests for injunctive relief and class action have been
withdrawn.  See Court's Docs. Nos. 69 & 84.

*Court's Doc. No. 66*.  Watson responded on May 3, 2006, (*Court's Doc. No. 88*), and Defendants replied on May 11, 2006.  *Court's Doc. No. 95*.  Watson moved for partial summary judgment on March 27, 2006, (*Court's Doc. No. 70*), and Defendants responded on April 24, 2006.  *Court's Doc. No. 79*.  Watson waived his right to file his optional reply brief.  *Court's Doc. No. 90*.

This case is currently set for trial on June 19, 2006, in Helena, Montana.  *Court's Doc. No. 46*.

**B.   FACTUAL**

Watson was convicted by his pleas of guilty to felony Aggravated Kidnapping and felony Robbery in the Thirteenth Judicial District Court of Montana, Yellowstone County, Cause No. DC 95-372.  *Oct. 28, 2004, Sched. Order*, Stip., at 3. Pursuant to a judgment issued on October 13, 1995, Watson was sentenced to the custody of the MDC for 25 years.  <u>Id</u>.  In that Judgment, the state district judge recommended to the MDC that Watson "be allowed to continue on mediation (*sic*) for his condition of attention deficit hyperactivity disorder and recommends to the Department of Corrections that he be provided with all of the resources available for psychological and psychiatric treatment for his mental health disorders...."  <u>See</u> *Court's Doc. No. 92* at 4.

Watson arrived at MSP on November 29, 1995, where he is currently serving his sentence.  *Oct. 28, 2004, Sched. Order*,

-4-

Stip., at 3.  During this period, he was transferred by MSP to two out-of-state correctional institutions: (1) Dickens County Correctional Center in Texas from August 1996 to December 1997, and (2) West Tennessee Detention Center from December 1997 to March 1999.  See *Plf.'s State. of Uncontroverted Facts* (*Court's Doc. No. 75*) at ¶¶ 26-27; *Plf.'s State. Material Issues of Fact* (*Court's Doc. No. 89*) at ¶ 5.

During his incarceration at MSP, Watson was placed on five separate behavior management plans ("BMPs"), four of those BMPs occurred between September 1999 and December 1999, and one occurred in January 2002.  *Sally Ann Cunningham Johnson, M.D., Feb. 21, 2006, Aff.* at ¶ 4.  In general, Watson's BMPs were conducted by denying Watson privileges and personal items, including clothing, water, bedding, and blankets.  *Plf.'s State. Material Issues of Fact* at ¶ 14.  These privileges and personal items were returned to Watson, as his conduct improved over the course of the BMP.  *Johnson Aff.* at ¶ 5.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute as to

a material fact is genuine if there is sufficient evidence for a reasonable trier of fact to return a verdict for the nonmoving party.  Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits, which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

The Court may not weigh the evidence or determine the truth of the matter, but only may determine whether there is a genuine issue for trial.  Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 410 (9th Cir. 1996).  All reasonable and justifiable inferences must be drawn in favor of the nonmoving party, including questions of credibility.  Mason v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991); United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing Liberty Lobby, 477 U.S. at 255).  It is the Court's responsibility "to determine whether the 'specific

facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987).

It is always important that parties understand fully these standards of review. If a party does not present "pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits" demonstrating that it has carried its burden, the Court cannot rule in its favor. See Fed. R. Civ. P. 56(c). As set forth more fully below, Watson has failed in many respects to carry his burden identified in the cases cited above. Watson filed no expert disclosures and no affidavits. Watson took no depositions in this case. Further, Watson failed to conform to the Local Rules in presenting his Statement of Uncontroverted Facts and Statement of Material Issues of Fact. Local Rule 56.1 (a) and (b) provide:

> The specific facts shall be set forth in serial
> fashion and not in narrative form. As to each
> fact, the statement shall refer to a specific
> portion of the record where the fact may be found.

Local Rule 7.2(a) provides in part:

> [E]ach exhibit must be labeled by number or
> letter. If an exhibit contains more than one
> page, each page of the exhibit must be numbered.
> References to exhibits must include specific page
> numbers.

Not only did Watson set forth facts in narrative form, Watson often failed to refer to the specific portion of the record where the fact could be found.  Additionally, it must be noted that references to unsworn hearsay statements are not references to the record.  See Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 345 n. 4 (9th Cir. 1995) (stating that inadmissible hearsay evidence may not be considered on a motion for summary judgment); Fed. R. Civ. P. 56(e) (affidavits "shall set forth such facts as would be admissible in evidence").  Watson attached numerous documents to his statements, but failed to label or number the many documents.  As a result, the Court found it exceedingly difficult to appreciate many of his contentions, and found it very time-consuming and at times nearly impossible to locate the individual documents referenced.  Of additional concern, the Court sometimes found that once the referenced documents were located, their content had been misrepresented.[3]

## III. DISCUSSION

### A.   WATSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

[3] For example, in page 4, paragraph 3 of Watson's Statement of Material Issues of Fact (*Document No. 89*), reference is made to a February 27, 2006, letter from an ACLU attorney to the Lieutenant Governor.  Watson represents that "issues of mental health care" were excluded from a finding of substantial compliance in an order in *Langford v. Schweitzer,* CV No. 92-13-H-LBE.  In fact, the cited letter states: "The medical, dental and mental health care requirements of the settlement agreement have thus been fulfilled."  The letter does reference noncompliance with the ADA, but does not mention health care noncompliance in that regard.

Pursuant to Fed. R. Civ. P. 56, Watson moves for partial summary judgment on the issue of liability on the basis of the "preclusive effect of prior judicial determinations" in <u>Walker v. State of Montana</u>, 2003 MT 134, 316 Mont. 103, 68 P.3d 872, and <u>State of Montana v. James Watson</u>, Mt. 13th Judicial District, Cause No. DC 95-372.  *Plf.'s Memo. of Law in Support of Mot. for P.S.J.* (hereafter "*Plf.'s P.S.J. Brief*") at 2-3. Watson asserts that the holdings in <u>Walker</u> are binding and controlling here.  He contends that based upon the "application of [the] principles of *stare decisis*, *res judicata*, collateral estoppel, issue preclusion, virtual representation (privity) and claim preclusion," he is entitled to summary judgment on his State constitutional claims and his Eighth Amendment cruel and unusual punishment claims.  <u>Id</u>.

Watson also suggests that "the question of [his] mental disability and need for treatment has been judicially determined in the original Sentence and Judgment which remains undisturbed."  <u>Id</u>. at 8.  He contends that because this is final, it is res judicata between the State and himself.  <u>Id</u>. Finally, Watson asserts that he is entitled to partial summary judgment on his ADA claim because "where a person with mental disabilities is subject to constitutional violations . . . there is a *per se* violation of the [ADA] provisions."  <u>Id</u>. at 2.

### 1.   Eighth Amendment and State Constitutional Claims

Watson asks the Court to impose judgment against the Defendants under the doctrines of res judicata (claim preclusion) and/or collateral estoppel (issue preclusion) pursuant to the Montana Supreme Court's opinion in <u>Walker</u>.  <u>Id</u>. at 4-15.

### a.   Res Judicata (Claim Preclusion)

"Federal courts are required to give full faith and credit to state court judgments under 28 U.S.C. § 1738." <u>Manufactured Home Communities, Inc. v. City of San Jose</u>, 420 F.3d 1022, 1031 (9th Cir. 2005) (citing <u>San Remo Hotel, L.P. v. City & County of San Francisco</u>, ___ U.S. ___, 125 S.Ct. 2491 (2005)). "Generally, '[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" <u>Id</u>. (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980)).  "To determine the preclusive effect of a state court judgment, federal courts look to state law."  <u>Id</u>. (citing <u>Palomar Mobilehome Park Ass'n v. City of San Marcos</u>, 989 F.2d 362, 364 (9th Cir. 1993)); <u>see also</u> <u>Spoklie v. Montana</u>, 411 F.3d 1051, 1055-56 (9th Cir. 2005) (applying Montana law in determining the preclusive effect of a Montana judgment).

"Res judicata serves the public function of finality of judgments and conservation of scarce judicial resources by avoiding multiplicity of proceedings on the same legal and

factual issues." <u>Olympic Coast Investment Inc. v. Wright</u>, 2005
MT 4, ¶ 26, 325 Mont. 307, ¶ 26, 105 P.3d 743, ¶ 26.  Res
judicata applies when the following criteria are met:

> (1)   The parties or their privies are the same;
> (2)   The subject matter of the action is the same;
> (3)   The issues related to the subject matter are
>       the same; and
> (4)   The capacities of the person are the same in
>       reference to the subject matter and the
>       issues between them.

<u>Baltrusch v. Baltrusch</u>, 2006 MT 51, ¶ 16, 331 Mont. 281, ¶ 16,
130 P.3d 1267, ¶ 16.

Watson's argument fails to meet the stated criteria for
applying the res judicata doctrine.  For example, the subject
matter of this action is not the same as the subject matter in
<u>Walker</u>.  <u>Walker</u> was a post-conviction proceeding and this is a
civil action for the recovery of damages.  Further, Watson
cannot demonstrate that the parties or their privies are the
same.  The only party in common between the two cases is the
State.  Watson was not a Plaintiff in <u>Walker</u> and Defendants MDC,
MSP, Mahoney, Lucier, Schaefer, and Jones were not named in
<u>Walker</u>.  The capacity of the State in <u>Walker</u> differed from the
capacity of the State here because the State in <u>Walker</u>, acting
in its capacity as prosecutor, was responding to Walker's post-
conviction petition, not defending against Watson's civil
claims.

Finding that none of the requisite res judicata criteria

-11-

are met, the holding in Walker cannot be given preclusive effect and does not warrant summary judgment here.

### b.    Collateral Estoppel (Issue Preclusion)

Watson also argues that he is entitled to partial summary judgment under the doctrines of collateral estoppel and/or issue preclusion.  Under these doctrines, "a valid and final determination in one proceeding of a necessary factual or legal issue . . . may not be relitigated in a subsequent proceeding involving a party to the prior action."  Dodd v. Hood River County, 136 F.3d 1219, 1245 (9th Cir. 1998).  These doctrines promote "judicial efficiency by preventing multiple lawsuits and [] enable the parties to rely on the finality of adjudications."  Id. at 1224-25 (citing Allen, 449 U.S. at 94).  This Court must give the state court judgment the same preclusive effect as it would be given by the courts of that state.  Id.

Collateral estoppel is a form of res judicata.  Finstad v. W.R. Grace & Co., 2000 MT 228, ¶ 28, 301 Mont. 240, ¶ 28, 8 P.3d 778, ¶ 28.  "Collateral estoppel . . . bars the reopening of an issue that has been litigated and determined in a prior suit."  Baltrusch, ¶ 15.  The following four-part test is applied to determine if collateral estoppel bars relitigation of an issue:

    (1)  the identical issue raised was previously decided in a prior adjudication;
    (2)  a final judgment on the merits was issued in the prior adjudication;
    (3)  the party against whom collateral estoppel is now asserted was a party or in privity with a

                              party to the prior adjudication; and ....
          (4)   the party against whom preclusion is asserted
                must have been afforded a full and fair
                opportunity to litigate any issues which may
                be barred.

Id. at ¶ 18.

     The first factor is the most important.  Finstad, ¶ 29.

For this element to be satisfied, "the identical issue or

'precise question' must have been litigated in the prior

actions."  Id.  The Court must compare the pleadings, evidence,

and circumstances surrounding the two actions to determine

whether the issue raised is identical.  Baltrusch, ¶ 25.

Preclusion cannot be avoided "simply by reframing the same

issues or raising novel contentions."  Id.  However, "the mere

fact that two cases arise from the same transaction does not

necessarily mean that each involve identical issues."  Id.

     A review of the record reveals that while there is overlap

between Walker and the instant case, several significant factual

distinctions and legal claims exist in the present action.  The

precise issues relevant to Watson's claim of cruel and unusual

punishment under the United States Constitution and the Montana

Constitution were not litigated in the Walker case.  In this

case, questions are raised as to exactly what occurred during

Watson's BMPs, whether Watson is seriously mentally ill, and if

so, whether Defendants' conduct exacerbated his mental illness.

Although the Court in Walker answered these questions as to

                                -13-

Walker, it made no determination as to Watson.  Thus, the "precise question" before this Court was not litigated in Walker.  Therefore, this element is not satisfied, and the doctrine of collateral estoppel is inapplicable.

Based on the foregoing, genuine issues of material fact preclude Watson's motion for partial summary judgment based on the doctrines of collateral estoppel and/or issue preclusion.

### 2.  Watson's Sentencing

Watson also argues that the determination of his mental disability and need for treatment was judicially determined in the original Sentence and Judgment.  *Plf.'s P.S.J. Brief* at 8.  Accordingly, he contends that because the Judgment is final, the doctrine of res judicata applies.  Id.

Although the Judgment and Commitment is final, it fails to satisfy the other elements of res judicata.  For example, the parties or their privies are not the same.  None of the Defendants, except the State, were parties to Watson's criminal prosecution.  Further, the State's role in Watson's prosecution was as prosecutor, and thus its capacity in relation to the subject matter and issues at sentencing was not the same as its capacity in the present action.  The subject matter of the two actions is not the same.  The earlier proceedings was a criminal prosecution, with the imposition of a criminal sentence.  The action before this Court is civil, seeking damages against the

-14-

Defendants for various federal and state causes of action.
Accordingly, the Court finds that res judicata does not apply to
the sentencing judge's comments about Watson's mental health.

### 3.   ADA

Finally, Watson asserts that the preclusive effect of the
Montana Supreme Court's decision in <u>Walker</u>, establishes as a
matter of law, a violation of the ADA.  *Plf.'s P.S.J. Brief* at
20.  Because the Court found that the doctrines of res judicata
and/or collateral estoppel did not apply to <u>Walker</u>, Watson's
argument regarding his ADA claim also fails.

Watson also argues that he is entitled to summary judgment
on his ADA claim because he was denied parole for impermissible
reasons.  <u>Id</u>. at 15-20.  To state a claim of disability
discrimination under Title II, the plaintiff must allege four
elements: (1) the plaintiff is an individual with a disability;
(2) the plaintiff is otherwise qualified to participate in or
receive the benefit of some public entity's services, programs,
or activities; (3) the plaintiff was either excluded from
participation in or denied the benefits of the public entity's
services, programs, or activities, or was otherwise
discriminated against by the public entity; and (4) such
exclusion, denial of benefits, or discrimination was by reason
of the plaintiff's disability.  <u>See</u> <u>Thompson v. Davis</u>, 295 F.3d
890, 895 (9th Cir. 2002).  This argument fails because Watson

-15-

has not pointed to anything in the record that establishes that he was categorically excluded from parole consideration because of his mental health disabilities.  Title II of the ADA does not categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability.  _Id_. at 898 n. 4. Watson has not satisfied his initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on his ADA claim. Accordingly, Watson's motion for partial summary judgment on this issue will be denied.

### B.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants present numerous arguments they believe merit summary judgment.  First, they contend that they are entitled to summary judgment because they did not violate Watson's Eighth Amendment right to be free from cruel and unusual punishment. _Def.s' Brief in Support of Mot. for S.J._ (hereafter "_Def.s' S.J. Brief_") at 4-8.

Defendants argue that judgment should be granted on Watson's claim under § 1983 for several reasons.  _Id_. at 8-11. First, they assert that summary judgment is appropriate because the State, its agencies, and its officers acting in their official capacities are not "persons", and thus cannot be sued under § 1983.  _Id_. at ¶¶ 8-9.  Second, they contend that

-16-

judgment is appropriate because the individual Defendants sued in their individual capacities have qualified immunity.  Id. at 9-10.  Finally, Defendants argue that they are entitled to summary judgment because Watson has not alleged the individual Defendants' personal participation in the alleged constitutional violation.  Id. at 10-11.

Defendants next argue that judgment should be granted because they did not violate Watson's rights under the Montana Constitution, Article II, §§ 4 and 22.  Id. at 11-12.  They also contend that judgment should be granted on Watson's negligence claim because he has not provided expert testimony to establish that Defendants departed from the applicable standard of care. Id. at 12-13.  Defendants assert that they enjoy immunity from Watson's state law claims, and thus should be granted summary judgment.  Id. at 13-15.

They further argue that judgment is appropriate because Watson's ADA claim fails as a matter of law.  Id. at 15-16. Defendants also contend that judgment should be granted because Watson's numerous negligence *per se* claims fail as a matter of law.  Id. at 16-22.  They assert that they are entitled to summary judgment on Watson's request for injunctive relief.  Id. at 22-23.  Finally, Defendants argue that judgment should be granted as to any and all alleged acts that do not fall within the applicable statute of limitations.  Id. at 23-24.

-17-

### 1.    Injunctive Relief

Defendants argue that they are entitled to summary judgment on Watson's request for injunctive relief.  Id. at 22-23.  On April 27, 2006, Watson filed a notice withdrawing his request for injunctive relief.  See Court's Doc. No. 84.  Accordingly, the Court will deny as moot this portion of Defendants' motion.

### 2.    Federal Law and Constitutional Claims

#### a.    42 U.S.C. § 1983 and Eighth Amendment Claims

Count VI of Watson's Amended Complaint is brought under 42 U.S.C. § 1983 ("§ 1983").[4]  Amend. Compl. at ¶¶ 50-52.  Watson alleges that Defendants' actions and/or inactions deprived him of the "rights, privileges, and immunities secured by the United States Constitution and in violation of the provisions of Title 42 U.S.C. § 1983."  Id. at ¶ 52.

Section 1983 does not create substantive rights; it merely serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes.  See Jones v. Williams, 297 F.3d 930, 935 (9th Cir. 2002).  Count I of

---

[4] Section 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

-18-

Watson's Amended Complaint alleges that Defendants' treatment of Watson "constitutes cruel and unusual punishment contrary to the Eighth Amendment to the United States Constitution[.]"  Id. at ¶ 37.  Accordingly, Watson states a claim under § 1983 for a violation of the cruel and unusual punishment clause of the Eighth Amendment.  To establish a cause of action under § 1983, Watson must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes.  Gibson v. U.S., 781 F.2d 1334, 1338 (9th Cir. 1986), cert. denied, 479 U.S. 1054 (1987).

### i.  Eighth Amendment

Defendants move for summary judgment on Counts I and VI of Watson's Amended Complaint, as they relate to the Eight Amendment of the United States Constitution.[5]  Def.s' S.J. Brief at 4-8.  Defendants contend that Dr. Sally Ann Cunningham Johnson's expert opinion establishes that "Defendants were not indifferent, much less deliberately indifferent," to Watson's mental health care needs.  Id. at 6-7.  They assert that they treated Watson's mental health needs appropriately and within the medical standard of care, and thus are not liable for a violation of the Eighth Amendment.  Id. at 8.

"The Constitution 'does not mandate comfortable prisons.'"

---

[5] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v.
Chapman, 452 U.S. 337, 349 (1981)).  Nor is the Eighth Amendment
a mandate for federal courts to become involved in routine
prison administration.  Hoptowit v. Ray, 682 F.2d 1237, 1246
(9th Cir. 1982).  However, the Eighth Amendment prohibits the
imposition of cruel and unusual punishments and "embodies broad
and idealistic concepts of dignity, civilized standards,
humanity and decency."  Estelle v. Gamble, 429 U.S. 97, 102
(1976) (citation and internal quotation marks omitted).  Prison
officials have a duty to ensure that prisoners are provided
adequate shelter, food, clothing, sanitation, medical care, and
personal safety.  See Farmer, 511 U.S. at 832; Keenan v. Hall,
83 F.3d 1083, 1089 (9th Cir. 1996); Hoptowit, 682 F.2d at 1246.
The circumstances, nature, and duration of a deprivation of
these necessities must be considered in determining whether a
constitutional violation has occurred. "The more basic the need,
the shorter the time it can be withheld."  Hoptowit, 682 F.2d at
1259; see also Anderson v. County of Kern, 45 F.3d 1310, 1314,
as amended, 75 F.3d 448 (9th Cir. 1995) ("[A] lack of sanitation
that is severe or prolonged can constitute an infliction of pain
within the meaning of the Eighth Amendment.")

      To state a claim under the Eighth Amendment, the prisoner-
plaintiff must show not only that prison officials were
subjectively and actually indifferent to the plight he alleges,

but also that the conditions themselves were objectively
sufficiently serious to acquire constitutional dimension; that
is, the conditions "must result in the denial of the minimal
civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at
834 (quoting <u>Rhodes</u>, 452 U.S. at 347).  Generally, only the most
severe deprivations can support an Eighth Amendment claim.
However, "[m]ore modest deprivations can also form the objective
basis of a violation, but only if such deprivations are lengthy
or ongoing."  <u>See</u> <u>Johnson v. Lewis</u>, 217 F.3d 726, 732 (9th Cir.
2000).

     The Eighth Amendment requires that prisoners receive
adequate medical care.  <u>Estelle</u>, 429 U.S. at 104; <u>see also</u>
<u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing
<u>Estelle</u>), *overruled on other grounds by*, <u>WMX Techs., Inc. v.</u>
<u>Miller</u>, 104 F.3d 1133 (9th Cir. 1997).  Prisoners must also be
protected from serious risks to their health.  <u>See</u> <u>e.g.</u>, <u>Farmer</u>,
511 U.S. at 837; <u>Helling v. McKinney</u>, 509 U.S. 25, 33-34 (1993);
<u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1076-77 (9th Cir. 1995).

     However, mere disagreement between a prisoner-patient and
prison medical personnel over the need for or course of medical
treatment is not a sufficient basis for an Eighth Amendment
violation.  <u>Franklin v. State of Or.</u>, 662 F.2d 1337, 1344 (9th
Cir. 1981); <u>see also</u> <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th
Cir. 1989).  The plaintiff must show that each defendant acted

with "deliberate indifference" to his serious medical needs.
However, as compared to the high standard set in Farmer:

> [T]he requirement of deliberate indifference is
> less stringent in cases involving a prisoner's
> medical needs than in other cases involving harm
> to incarcerated individuals because '[t]he State's
> responsibility to provide inmates with medical
> care ordinarily does not conflict with competing
> administrative concerns.'

McGuckin, 974 F.2d at 1060 (quoting Hudson v. McMillian, 503
U.S. 1, 6 (1992)).

Deliberate indifference under an Eighth Amendment medical
care claim requires consideration of "the seriousness of the
prisoner's medical need" and "the nature of the defendant's
response to that need."  Id. at 1059.  It is firmly established
that "medical needs" include not only physical health needs,
but mental health needs as well.  Hoptowit, 682 F.2d at 1253.
"A 'serious' medical need exists if the failure to treat a
prisoner's condition could result in further significant injury
or the 'unnecessary and wanton infliction of pain.'"  McGuckin,
974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  As
examples of serious medical needs, the Ninth Circuit has listed
the following:

> The existence of an injury that a reasonable
> doctor or patient would find important and worthy
> of comment or treatment; the presence of a medical
> condition that significantly affects an
> individual's daily activities; or the existence of
> chronic and substantial pain.

Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332,

1337-41 (9th Cir. 1990) and <u>Hunt v. Dental Dep't</u>, 865 F.2d 198, 200-01 (9th Cir. 1989)).

Defendants' argument in favor of summary judgment on the Eighth Amendment claim focuses on Watson's health care needs and whether Defendants were deliberately indifferent to such needs. They submit expert disclosures and affidavits which state that Defendants provided Watson with systematic, regular mental health care that at no time deviated from the medical standard of care. <u>See</u> *Def.s' State. of Uncontroverted Facts (Court's Doc. No. 67)* at ¶¶ 7-16, and citations to the record therein. Watson presents no countervailing citations to the record to demonstrate that a genuine issue of material fact exists with respect to the provision of medical care.[6] Further, he presents no citations to the record to demonstrate that the medical standard of care falls below the required Eighth Amendment standard of care. Therefore, the Court concludes that Defendants are entitled to an order granting summary judgment on Watson's Eighth Amendment claim insofar as it relates to the provision of medical care.

Defendants' motion, however, does not discuss other

_____

[6] This contrasts with the evidence before the Montana courts in <u>Walker</u>, wherein a private, board certified psychologist opined that MSP's treatment of Walker "had fallen so far below the standard of care that it was negligent and scandalous." <u>Walker</u>, ¶ 62. Another psychiatrist concluded that the prison mental health staffs' diagnosis of Walker was "preposterous" and "fell below the ethical standards of practicing medicine in this field." <u>Id</u>. at ¶ 65. No such evidence has been presented regarding Watson.

contentions made by Watson regarding his conditions of confinement.  The Amended Complaint alleges that Watson was placed in a "filthy, uninhabitable" cell, denied water, and given unsanitary food.  *Amend. Compl.* at ¶ 1.  In his Statement of Uncontroverted Facts, at paragraph 31, he refers to his prior deposition testimony wherein he testified that he was put in a cell with mucus and urine on the walls and floor, and feces on or around the toilet.  At paragraph 34, he refers to his prior deposition testimony wherein he testified that he was denied cleaning supplies and was forced to live in a dirty cell "including urine in the cell [that] was not caused by him." Defendants do not sustain their initial burden of identifying those portions of the pleadings, discovery, or affidavits to demonstrate the absence of a genuine issue of material fact with respect to these alleged Eighth Amendment violations.  In Hoptpwit, the Ninth Circuit held:

> The Eighth Amendment standards for conditions in
> isolation, segregation, and protective custody
> cells are no different from standards applying to
> the general populations.  Prison officials may not
> deprive prisoners of the basic necessities of life
> protected by the Eighth Amendment by placing them
> in different forms of detention.  Prison officials
> must provide all prisoners with adequate food,
> clothing, shelter, sanitation, medical care, and
> personal safety.  To deprive prisoners in
> isolation, segregation, or protective custody of
> any of these violates the Eighth Amendment.

Hoptowit, *supra*, 682 F.2d at 1258.  Accordingly, the Court finds that genuine issues of material fact preclude summary

judgment with respect to Watson's claims regarding inadequate food, clothing, and sanitation.

### ii.  "Persons" Under § 1983

Defendants argue that Watson's claim under § 1983 against the State, its agencies, and its officers acting in their official capacities must be dismissed.  *Def.s' S.J. Brief* at 8. They contend that the state and/or its agencies are not a "person" under § 1983, and thus cannot be sued under § 1983. Id.  Defendants also assert that state officials sued in their official capacities for damages cannot be sued under § 1983. Id.  The Court agrees.

States are not "persons" for purposes of § 1983. Arizonans for Official English v. Ariz., 520 U.S. 43, 69 (1997) (citing Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989)).  Section 1983 claims against states, therefore, are legally frivolous.  Jackson v. Ariz., 885 F.2d 639, 641 (9th Cir. 1989).

A governmental agency that is an arm of the state is also not a "person" for purposes of § 1983.  Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997) (citing Will, 491 U.S. at 70).  A state's Department of Corrections and prison is an arm of the state under this analysis.  Orozco v. Day, 281 Mont. 341, 347-48, 934 P.2d 1009, 1012-13 (1997); see also Hale v. Ariz., 993 F.2d 1389, 1398-99 (9th Cir. 1993)

(concluding that the Arizona Department of Corrections was an arm of the state and, thus, not a person for § 1983 purposes). Finally, state officials sued in their official capacity for damages are not "persons" for purposes of § 1983.  <u>Lawrence Livermore</u>, 131 F.3d at 839 (citing <u>Will</u>, 491 U.S. at 71).

Based on the foregoing, the Court finds that the State, MDC, and MSP are not "persons" for purposes of § 1983. Further, to the extent that Watson's § 1983 claim for damages is asserted against Mahoney, Lucier, Schaefer, and Jones, in their official capacities, they are also not "persons" for purposes of § 1983.  Accordingly, Watson's § 1983 claim against the State, MDC, MSP, Mahoney, Lucier, Schaefer, and Jones, in their official capacities, fails as a matter of law. Therefore, the Court will grant Defendants' motion on this issue.

### iii. Qualified Immunity

Defendants argue that Defendants Mahoney, Lucier, Schaefer, and Jones, to the extent they are being sued in their individual capacities, are entitled to summary judgment because they enjoy qualified immunity. *Def.s' S.J. Brief* at 9.  They contend that "the sole and uncontroverted expert testimony . . . established that [Watson's] mental health issues were extensively treated, and that [Watson's] treatment and care were within the standard of care at all times." <u>Id</u>. at 9-10.

Watson's argument in response to Defendants' argument is difficult to follow, but it appears he contends that "qualified immunity is functionally irrelevant to [his] § 1983 claim under state law." *Plf.'s Brief* at 7-8.  He argues that the Montana Supreme Court and Ninth Circuit case law "recognize Montana's special waiver provisions of sovereign immunity for § 1983 claims."  <u>Id</u>. at 8-11.

Qualified immunity "protects § 1983 defendants from liability for civil damages when performing discretionary functions, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 650-51 (9th Cir. 2001) (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).  Qualified immunity provides a protection to government officials that is quite far-reaching.  "[I]t safeguards 'all but the plainly incompetent or those who knowingly violate the law. . . .  [I]f officers of reasonable competence could disagree on th[e] issue [whether a chosen course of action is constitutional], immunity should be recognized." <u>Brewster v. Bd. of Educ. of Lynwood Unified School Dist.</u>, 149 F.3d 971, 977 (9th Cir. 1998) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

The standard for determining qualified immunity is objective.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

The United States Supreme Court has set out a two-prong test for evaluating qualified immunity's availability.  <u>Saucier v. Katz</u>, 533 U.S. 194 (2001).  First, courts must consider "whether plaintiff's allegations, if true, establish a constitutional violation."  <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002) (citing <u>Saucier</u>, 533 U.S. at 201).  If such a violation occurred, courts must then ask "'whether the right was clearly established . . . in light of the specific context of the case' such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" <u>Headwaters Forest Defense v. County of Humboldt</u>, 276 F.3d 1125, 1129 (9th Cir. 2002) (quoting <u>Saucier</u>, 533 U.S. at 201).

For the law to be "clearly established," "[t]he contours of the right" must be sufficiently clear that a reasonable official would understand that his conduct violates that right. <u>Anderson</u>, 483 U.S. at 640.  It is not necessary that the "very action in question has previously been held unlawful, . . . but it is to say that in light of preexisting law the unlawfulness must be apparent" to the official.  <u>Id</u>.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted."  <u>Saucier</u>, 533 U.S. at 202.

The Court finds that the rights to the basic needs

-28-

referenced above were clearly established at the time of the alleged violations in 1999 and 2002.  Accordingly, the Court finds that Defendants are not entitled to qualified immunity.

### iv.  Personal Participation

Defendants further argue that Defendants Mahoney, Lucier, Schaefer, and Jones are entitled to summary judgment on Watson's § 1983 claim because Watson has not alleged their personal participation in the alleged constitutional violation. *Def.s' S.J. Brief* at 10-11.  They contend that § 1983 requires a demonstration that the Defendants personally participated in the alleged constitutional violation.  <u>Id</u>. at 10.  Defendants assert that none of the allegations contained in Watson's Amended Complaint demonstrate the necessary personal involvement of these Defendants.  <u>Id</u>. at 11.  Watson did not respond.

In their reply brief, Defendants argue that because Watson failed to respond to this argument, their motion should be granted.  *Def.s' Reply Brief in Support of Def.s' Mot. S.J.* (hereafter "*Def.s' Reply Brief*") at 5.  Defendants are correct that under the Local Rules, Watson's failure to respond is deemed an admission that the motion is well taken.  <u>See</u> *Local Rule 7.1(i)*.  Nevertheless, the Court is required to address, on the merits, this issue of personal participation.  <u>See</u> <u>Couveau v. American Airlines, Inc.</u>, 218 F.3d 1078, 1081-82 (9th

Cir. 2000); <u>Marshall v. Gates</u>, 44 F.3d 722, 725 (9th Cir. 1995)
(noting that it is not proper for a court to grant a summary
judgment motion simply because the non-moving party violated a
local rule).  In addressing the merits, however, the Court
recognizes that it is not obligated "to scour the record" for
potential triable issues of fact to which it was not
specifically referred.  <u>Carmen v. San Francisco Unified Sch.</u>
<u>Dist.</u>, 237 F.3d 1026, 1028-29 (9th Cir. 2001); <u>Keenan v. Allen</u>,
91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or
that of the district court, to scour the record in search of a
genuine issue of triable fact.  We rely on the nonmoving party
to identify with reasonable particularity the evidence that
precludes summary judgment." (citation and internal quotation
marks omitted)).

Liability under § 1983 must be based on a showing of
personal participation in the alleged deprivation of rights by
the defendant.  <u>Jones</u>, *supra*, 297 F.3d at 934.  "There is no
respondeat superior liability under § 1983."  <u>Id</u>. (citing
<u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658 (1978)).  Watson
must "allege facts, not simply conclusions, that show that an
individual was personally involved in the deprivation of his
civil rights."  <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th
Cir. 1998).

Liability may also be established "if defendant sets into

motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Powell v. Cook, 74 F.Supp.2d 994, 1000 (D. Or. 1999) (citation and internal quotation marks omitted). A supervisor may be liable "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation." Id. (citation and internal quotation marks omitted).

The Court will grant Defendants' motion as to Defendants Jones and Mahoney. Watson has pointed to no evidence of their personal participation in depriving Watson of basic needs. Watson has made no showing, nor could the Court find any evidence, that these Defendants directed, participated in, or had knowledge of these alleged violations.

However, evidence does exist to raise factual issues as to whether Schaefer and Lucier personally participated in activities related to inadequate food, clothing, and sanitation. For example, Lucier, as Unit Manager, not only initiated and participated in numerous BMPs, he provided "clearance" for the return of Watson's property and privileges, and was present in Watson's cell during the BMPs. See generally Watson Bates Nos. 3676, 3684, 3690-93, 3705. Also, evidence indicates that Dr. Schaefer had some personal

participation and/or knowledge of the events related to
Watson's claims.  <u>See</u> <u>generally</u> Watson Bates Nos. 3691, 3693,
3704 (discussing Schaefer's approval, initiation, and
participation in Watson's BMPs).  Although the evidence does
not appear to be strong, the Court may not weigh the evidence
and must draw all inferences in favor of the nonmoving party.
Thus, the Court will deny Defendants' motion as to Schaefer and
Lucier.

**b.   ADA**

Count V of Watson's Amended Complaint alleges a violation
of the ADA.  *Amend. Compl*. at ¶¶ 48-49.  He contends that
because of his mental disability, he has been denied access to
prison programs, appropriate services, and activities in
violation of the ADA and § 504 of the Rehabilitation Act.  <u>Id</u>.
at ¶ 3.  Watson argues that he has been denied access because
of Defendants' failures to adequately treat and/or monitor his
serious medical condition.  <u>Id</u>.  He contends that Defendants'
actions and/or inactions toward him violated the ADA, as he is
a disabled person who suffered injuries and damages as a
proximate result of Defendants' violations.  <u>Id</u>. at ¶ 49.

Defendants argue that Watson's ADA claim fails as a matter
of law, and thus contend that judgment should be entered.
*Def.s' S.J. Brief* at 15-16.  Relying on Johnson's expert
disclosure and affidavit, they assert that Watson "was offered

and participated in a variety of individual and group counseling programs at MSP, in addition to educational programs." Id. Defendants argue that "there is no genuine issue of fact that [Watson] was not excluded from participation in, or denied the benefits of, MSP's services, programs, or activities, or was otherwise discriminated against by MSP." Id. at 16.

In the alternative, Defendants argue that if the Court does not grant their request for summary judgment on Watson's ADA claim, that it grant summary judgment to Mahoney, Lucier, Schaefer, and Jones, in their individual capacities, "to the extent that [Watson] is asserting his ADA claim as one for damages pursuant to § 1983." Id.

Watson responds by stating that "[i]t appears that the Defendants may have misapprehended the nature of [his] ADA claim." Plf.'s Brief at 14. Watson proceeds to argue that the basis of the alleged ADA violation is his denial of parole. Id. at 14-16. He claims that he "has been repeatedly denied parole based upon the manifestations of his serious mental illness." Id. at 14.

Watson's Amended Complaint does state an ADA claim. Amend. Compl. at ¶¶ 3, 30, 48-49. The Amended Complaint does not include any specific allegation that he was denied parole due to his serious mental illness, in violation of the ADA.

-33-

Rather, it states that he was "denied access to programs, appropriate services, and activities of MSP" because of his serious mental illness.  Id. at ¶ 3.  Review of Watson's Preliminary Pretrial Statement also provides no reference to this legal theory.  See *Plf.'s Prelim. Pretrial State.* at 8-9. In fact, it appears to the Court that the first reference to this theory was in Watson's motion for partial summary judgment and his response brief to this motion.  Nonetheless, the Court now understands that this ADA claim in based upon Watson's assertion that he was impermissibly denied parole, and will treat it as timely raised.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To prove a violation of the ADA, Watson must establish that: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  Rodde v. Bonta, 357 F.3d 988, 995 (9th Cir. 2004) (citing Weinreich v. Los Angeles County MTA,

-34-

114 F.3d 976, 978 (9th Cir. 1997)).

In their reply brief, Defendants argue that Watson's theory is contrary to both the facts and the law. *Def.s' Reply Brief* at 13. Even if the Court assumes that Watson is a "qualified individual with a disability", he has not presented any affidavits or citations to the record which raise genuine issues of material fact as to his claim that he was either excluded from participation in, nor denied parole or the benefits of MSP's programs or activities because of his alleged mental illness. See Watson Bates Nos. 3983-3989, 4006-4013, 4036-4041, 4116-4120, 4179-4184. Watson provides the Court with no citations to the record raising an issue of fact as to whether he was categorically excluded from parole because of a disability, which is the proper legal standard. See Court's discussion at pp. 15-16, *supra*. Watson also fails to note that after his conduct improved, he was granted parole (Watson Bates Nos. 4591, 4595) and as recently as March 2006, the Board of Pardons and Parole was continuing to work on parole options. See Watson Bates No. 4610 (reverse side). Accordingly, Defendants' motion for summary judgment as to Watson's ADA claim will be granted.

### 3.   Montana State Law and Constitutional Claims

#### a.   Constitutional Claims

Counts I and II of Watson's Amended Complaint raises

claims under the Montana Constitution.  Count I alleges that
Defendants' treatment of Watson constitutes cruel and unusual
punishment under Article II, §§ 4, 22, 28, and 34 of the
Montana Constitution.  *Amend. Compl.* at ¶ 37.  Count II alleges
that Defendants' actions and/or inactions violate Watson's
"inviolable rights as human beings that are preserved under
Article II, Section 4, and Article II, Section 22, of the 1973
Montana Constitution."  Id. at ¶ 39.

### i.   Article II, §§ 4 and 22

Defendants contend that they did not violate Watson's
rights under Article II, §§ 4[7] and 22[8] of the Montana
Constitution and thus are entitled to summary judgment.  *Def.s'*
*S.J. Brief* at 11-12.  They assert that "the uncontrovered
expert psychiatric testimony establishes that [Watson] does not
suffer from a serious mental illness, and the administration of
BMPs did not exacerbate his mental disorders at all."  Id. at
12.  Defendants contend that the uncontradicted medical
testimony establishes that they were not indifferent to
Watson's mental health needs, but attended to those needs in

---

[7] Article II, § 4 provides that "[t]he dignity of the human being
is inviolable. No person shall be denied the equal protection of the
laws. Neither the state nor any person, firm, corporation, or institution
shall discriminate against any person in the exercise of his civil or
political rights on account of race, color, sex, culture, social origin
or condition, or political or religious ideas."

[8] Article II, § 22 provides that "[e]xcessive bail shall not be
required, or excessive fines imposed, or cruel and unusual punishments
inflicted."

accordance with the medical standard of care.  Id.

Watson responds by arguing that the "Defendants' reading
of the Supreme Court decision in *Walker v. State*, is artificial
and fails to address the underpinnings for a constitutional
tort based upon Montana constitutional provisions."  *Plf.'s
Brief* at 11.  He contends that the Walker decision is not
confined to only cases in which an inmate suffers from a
serious mental illness which is exacerbated.  Id.  Watson
asserts that "the Montana Supreme Court intended, and it did
apply, Article II, § 4 and § 22 to all mentally ill inmates
subjected to BMP's."  Id. at 13.

Article II, § 22 of the Montana Constitution, must be read
together with the "human dignity" clause of Article II, § 4.
Walker, *supra*, ¶¶ 72-75.  The Court in Walker, noted that these
sections when read together "provide Montana citizens greater
protections from cruel and unusual punishment than does the
federal constitution."  Id. ¶ 73.  Montana's Constitution
forbids:

> correctional practices which permit prisons in the
> name of behavior modification to disregard the
> innate dignity of human beings, especially in the
> context where those persons suffer from serious
> mental illness.  We cannot sanction correctional
> practices that ignore and exacerbate the plight of
> mentally ill inmates like Walker, especially when
> that inmate is forced to rely on the prison for
> his care and protection.  The plain meaning of the
> dignity clause commands that the intrinsic worth
> and the basic humanity of persons may not be
> violated.  Moreover, if the particular conditions

of confinement cause serious mental illness to be
greatly exacerbated or if it deprives inmates of
their sanity, then prison officials have deprived
inmates of the basic necessity for human existence
and have crossed into the realm of psychological
torture.

Id. at ¶ 82.  Applying this, the Court held that when reading
§§ 4 and 22 together "BMPs and the living conditions on A-block
constitute an affront to the inviolable right of human dignity
possessed by the inmate and that such punishment constitutes
cruel and unusual punishment when it exacerbates the inmate's
mental health condition."  Id. at ¶ 84.

Because the Court previously found, *supra*, that there are
genuine issues of material fact that preclude summary judgment
on the issue of the Eighth Amendment, the Court finds that
there are also issues of material fact which precludes summary
judgment on this issue.  Accordingly, Defendants' motion will
be denied.

### ii.  Article II, §§ 28 and 34

Defendants also seek summary judgment on Watson's claim
under the Montana Constitution, Article II, §§ 28[9] and 34.[10]
*Def.s' Brief* at 8.  They contend that "there is no

---

[9] Article II, § 28 provides that: "(1) Laws for the punishment of
crime shall be founded on the principles of prevention, reformation,
public safety, and restitution for victims. (2) Full rights are restored
by termination of state supervision for any offense against the state."

[10] Article II, § 34 provides that "[t]he enumeration in this
constitution of certain rights shall not be construed to deny, impair,
or disparage others retained by the people."

jurisprudence suggesting that these two sections are independently actionable[.]" Id.  Watson did not respond.

Montana has recognized "a cause of action for money damages for violations of those self-executing provisions of the Montana Constitution." Dorwart v. Caraway, 2002 MT 240, ¶ 44, 312 Mont. 1, ¶ 44, 58 P.3d 128, ¶ 44.  In making this determination, the Court applied the Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), line of authority and § 874A of the Restatement (Second) of Torts to its analysis.  Id.  Section 874A sets out the general principle of Bivens and its progeny.  It provides that:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

Rest. 2d Torts § 874A.  Section 874A, comment a, states that the term "legislative provision" includes a constitutional provision.  Dorwart, ¶ 38.

The Court's decision in Dorwart, however, was limited to Article II, §§ 10, 11, and 17.  The Court found no case law stating that §§ 28 and 34 are also "self-executing".  Justice Nelson's special concurring opinion in Dorwart, however, is

-39-

instructive.  See id. ¶¶ 93-114.

Justice Nelson felt that it was important for the Court to also address the language of the Montana Constitution in recognizing that there is a direct, private right of action for state constitutional violations.  Id. at ¶ 93.  After a lengthy analysis, Justice Nelson found that:

> the people have reserved unto themselves under Article II, Section 34 of the Constitution of Montana, the unenumerated right to sue their government, its agents, and in some cases, their fellow citizens, directly in the courts of this state for violations of their fundamental rights protected under Montana's Constitution.

Id. ¶ 110.  He believes that "Montana's Constitution contains within it's (sic) own provisions a heretofore untapped source of authority-- Article II, Section 34-- guaranteeing to the people, by their own reservation, an unenumerated, yet fundamental, right of direct action for constitutional violations."  Id. ¶ 114.

Even if such provisions were self-executing, however, Watson did not bear his burden of presenting specific facts demonstrating any potential triable issues of fact on this allegation.  See Carmen, 237 F.3d at 1028-29.  Consequently, the Court will grant Defendants' motion for summary judgment.

### b.   State Law Claims

#### i.   Immunity

First, Defendants argue that Mahoney, Lucier, Schaefer,

and Jones are entitled to summary judgment because they are immune from Watson's state law claims.  *Def.s' S.J. Brief* at 13-15.  They contend that the Montana Tort Claims Act ("MTCA") and Mont. Code Ann. § 2-9-305 provides that "the State must indemnify its employees for actions taken in the course and scope of their employment, and state employees are absolutely immune in their individual capacities."  Id. at 14.

In Montana, governmental entities "are subject to liability for their own wrongful conduct and that of their employees acting within the scope of their duties."  Kenyon v. Stillwater County, 254 Mont. 142, 146, 835 P.2d 742, 745 (1992), *overruled on other grounds by*, Heiat v. E. Mont. College, 275 Mont. 322, 912 P.2d 787 (1996), (citing Mont. Code Ann. § 2-9-102).  Where an action is brought against the governmental entity based on actionable conduct by an employee, the employee is immune from individual liability for the conduct if the governmental entity "acknowledges that the conduct arose out of the course and scope of the employee's official duties."  Id. (citing Mont. Code Ann. § 2-9-305).

This is exactly the situation before the Court.  In their response brief, the State, through counsel, acknowledged that the conduct alleged in Watson's Amended Complaint, upon which his state law claims are brought, arose out of the course and scope of the individual Defendants' employment with the State.

*Def.s' S.J. Brief* at 14-15.  Watson has offered no allegations,
nor argument, that Mahoney, Lucier, Schaefer, and Jones acted
outside the scope of their employment.  In fact, in his Amended
Complaint, he states "each of the individual Defendants were
acting within the course and scope of their employment or
agency."  *Amend. Compl.* at ¶ 5.  Accordingly, because no
genuine issue of material fact exist, the Court will grant
Defendants' motion for summary judgment on this issue.[11]

### ii.  Negligence

Count III of Watson's Amended Complaint alleges a claim
for negligence.  *Amend. Compl.* at ¶¶ 40-43.  Watson contends
that "Defendants' ongoing and continuous failure to address
[his] mental health needs, and provide [him] with adequate
mental health care and services have caused damages to
[Watson]."  Id. at ¶ 41.  He argues that the Defendants
breached their duty of care and their actions and/or inactions
have caused him damages "including but not limited to, loss of
good time; loss of ability of parole; loss of enjoyment of life
and human dignity; loss of liberty; a deterioration of mental
health; and an ongoing and continuous infliction of pain and
suffering as well as potential losses of earnings and earning
capacity."  Id. at ¶¶ 42-43.

---

[11] An exception to this immunity is stated in Mont. Code Ann. § 2-9-
305(5) and (6).  This exception is addressed on page 52 of this Order.

Defendants argue that they are entitled to summary judgment because Watson's medical negligence claim fails "because he has provided no expert testimony establishing that Defendants departed from the applicable standard of care." *Def.s' S.J. Brief* at 12-13.  They contend that Watson's claim fails because he has not disclosed any expert witnesses. Defendants assert that because Watson has not disclosed any expert witnesses, he cannot present testimony as to the standard of care or breach of that standard.  Id. at 13.

Watson claims that Defendants "erroneously" assert that his negligence claim is for medical negligence.  However, a reading of Watson's Amended Complaint indicates that his negligence claim is based on medical malpractice.[12]  See *Amend. Compl.* at ¶ 43 (stating that "Defendants' ongoing and continuous failure to address [Watson's] mental health needs, and provide [him] with adequate mental health care and services have cause[d] damage to [Watson]").

In order to survive a motion for summary judgment in a negligence action, Watson must establish: (1) the defendant owed a duty to him; (2) the defendant breached the duty; (3) the breach was the actual and proximate cause of his injury; and (4) that damages resulted.  Bonilla v. Univ. of Mont., 2005

---

[12] Watson also makes reference later in his response brief to institutional malpractice.  See *Plf.'s Brief* at 24.

MT 183, ¶ 14, 328 Mont. 41, ¶ 14, 116 P.3d 823, ¶ 14; see also
Butler v. Domin, 2000 MT 312, ¶ 21, 302 Mont. 452 ¶ 21, 15 P.3d
1189, ¶ 21.

Further, in a medical malpractice action, Watson must
provide competent expert testimony establishing: (1) a
departure from the applicable standard of medical care; (2)
that Defendants departed from the standard; and (3) that the
departure proximately caused Watson's injury.  Falcon v.
Cheung, 257 Mont. 296, 303, 848 P.2d 1050, 1055 (1993).
Exceptions to this general rule exist.  For example, in Montana
Deaconess Hospital v. Gratton, 169 Mont. 185, 189, 545 P.2d
670, 673 (1976), the Montana Supreme Court recognized an
exception when the conduct complained of is readily
ascertainable by a layperson.  Missing in this case, however,
is evidence of any standard of care against which the acts or
omissions of Defendants can be measured to establish
negligence.  This case presents complex questions of prison
psychiatric health care which are beyond the knowledge of
laypersons, and thus, this exception does not apply.

Watson's reliance on Cain v. Stevenson, 218 Mont. 101, 706
P.2d 128 (1985) and Moralli v. Lake County, 255 Mont. 23, 839
P.2d 1287 (1992), in arguing that he is not required to have a
medical expert establish a casual relationship between the
Defendants' conduct and his injuries, is misplaced.  These

cases held that a plaintiff is not required to provide expert testimony about causation of damages from a physical injury, or the permanency of such injury, when causation and permanency are readily apparent to a layperson.  See Cain, 218 Mont. at 105-06, 706 P.2d at 131; Moralli, 255 Mont. at 29, 839 P.2d at 1289.  The issue before the Court, however, is that of establishing the medical standard of care, and whether Defendants breached that standard of care.

Based on the record before the Court, the Court concludes that there is no genuine issue of material fact because Watson has failed to produce a medical expert competent to establish the applicable standard of care and a departure from that standard.  See Hunter v. Missoula Community Hosp., 230 Mont. 300, 305, 750 P.2d 106, 109 (1988) (holding that in absence of testimony of competent medical expert as to standard of proper medical care and departure therefrom, summary judgment is appropriate).  Accordingly, summary judgment is appropriate, and the Court will grant Defendants' motion on this issue.

### iii. Negligence *Per Se*

Count IV of Watson's Amended Complaint alleges several negligence *per se* claims.  Id. at ¶¶ 44-47.  Watson contends that "Defendants agents and/or employees, who assisted with assessing and treating [Watson's] mental health needs did not have the appropriate state and federal licensure,

-45-

certification, and registration requirements." Id. at ¶ 45.
He argues that Defendants are guilty of negligence *per se* "by
allowing unqualified persons to treat [Watson's] mental health
condition" and that such negligence caused damages under §
20.27.254 of the Administrative Rules of Montana ("ARM"). Id.
¶ 46.  Watson further alleges that Defendants violated Mont.
Code Ann. §§ 46-18-225, 45-5-201, 45-5-201, 45-5-203, 45-5-204,
49-3-205, 49-3-203, 49-3-209, 49-2-308, 49-1-101, 49-1-102, 49-
2-301, and 49-1-201.  He argues that these violations "also
constitute negligence *per se* with consequent damages[.]" Id. ¶
47.

A statutory violation may amount to negligence *per se*.
VanLuchene v. Mont., 244 Mont. 397, 401, 797 P.2d 932, 935
(1990).  In order to prevail on a negligence *per se* claim,
Watson must prove:

> (1)   the defendant violated the particular
>       statute;
> (2)   the statute was enacted to protect a specific
>       class of persons;
> (3)   the plaintiff is a member of that class;
> (4)   the plaintiff's injury is of the sort the
>       statute was enacted to prevent; and
> (5)   the statute was intended to regulate members
>       of defendant's class.

Prindel v. Ravalli County, 2006 MT 62, ¶ 27, 331 Mont. 338, ¶
27, ___ P.3d ___, ¶ 27.  The "existence of a legal duty is a
matter of law properly determined by the court." Id. ¶ 20.

### 1.   ARM § 20.27.254

Defendants argue that Watson's negligence *per se* claim for violation of ARM § 20.27.254 fails as a matter of law.  *Def.s' S.J. Brief* at 16-17.  They contend that this regulation only applies to private correctional facilities located within the State.  Accordingly, Defendants assert that because MSP is not regulated by this regulation, they are entitled to summary judgment.  Id. at 16.

Watson argues that "placement of Watson in an out of state facility without any treatment or rehabilitative services immediately after his initial classification at MSP, was a regulatory and statutory violation, and gives rise to a negligence *per se* claim."  *Plf.'s Brief* at 19.  He relies on Mont. Code Ann. §§ 53-30-106, 53-30-604, and 53-30-608 in support of this argument.  This, however, is a new claim raised for the first time in Watson's response brief.  Accordingly, because Watson's Amended Complaint does not state a negligence *per se* claim under these statutes, the Court will not consider his argument.  See Valdez v. The Regents of the Univ. of Cal., 2005 WL 1541086 *2 (E.D. Cal. 2005) (citing Gilmour v. Gates, McDonal & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that "A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment")).

The Court will also grant Defendants' request for summary judgment on Watson's existing negligence *per se* claim under ARM

§ 20.27.254.  ARM § 20.27.254 establishes health care requirements for persons confined in private correctional facilities.  ARM § 20.27.201 states that "[t]hese rules establish the licensing requirements for the operation, security, and physical condition, as well as for the safety, health, treatment and discipline of persons confined in a private correctional facility <u>within</u> the state of Montana. . . ."  (Emphasis added).

Watson's only allegation regarding private correctional institutions concerns out-of-state facilities.  One of the necessary elements of a negligence *per se* claim is that the statute allegedly violated was intended to regulate members of Defendants' class.  <u>See</u> <u>Prindel</u>, ¶ 27.  ARM § 20.27.254 was intended only to regulate private correctional facilities within the State of Montana.  Accordingly, ARM § 20.27.254 does not apply.

Based on the foregoing, the Court finds that Watson's negligence *per se* claim for violation of ARM § 20.27.254 fails as a matter of law.

## 2.   Mont. Code Ann. § 46-18-225

Defendants also contend that Watson's negligence *per se* claim for violation of Mont. Code Ann. § 46-18-225 fails as a matter of law.  *Def.'s S.J. Brief* at 17.  They argue that this statute is not applicable.  Accordingly, Defendants assert that

they should be entitled to summary judgment.  Id.

Watson responds that § 46-18-225, as it currently exists, was not the statutory provision under which he was sentenced. *Plf.'s Brief* at 21.  He contends that it was the duty of the MDC to comply with the terms of the sentencing court.  Watson argues that because the MDC failed to do so, "it violated the mandated sentencing criteria, and it violated the statute by failing to perform its duties in connection with the imposition and carrying out of Watson's sentence."  Id. at 22.

Watson's first argument fails because each version of § 46-18-225 imposes obligations on the sentencing judge, not on the MDC.  As noted above, one of the necessary elements of a negligence *per se* claim is that the statute allegedly violated was intended to regulate members of Defendants' class.  See Prindel, ¶ 27.  This statute does not regulate the named Defendants, it regulates the district court in its sentencing of nonviolent felony offenders.  The proper application for this statute would be in a case claiming that Watson's sentence was improper, not in this case where Watson claims that the Defendants have improperly carried out the sentence.

Thus, Watson's negligence *per se* claim for violation of Mont. Code Ann. § 46-18-225 fails as a matter of law.

### 3.    Mont. Code Ann. §§ 45-5-201, 45-5-203, and 45-5-204

Defendants contend that they are entitled to summary

-49-

judgment on Watson's negligence *per se* claim for violation of
Mont. Code Ann. §§ 45-5-201, 45-5-203, and 45-5-204 because
Watson fails to state a sufficient factual basis to support
these claims.  *Def.s' S.J. Brief* at 17.  They argue that Watson
"fails to state an assault claim [under § 45-5-201] against any
of the named Defendants, and fails to state any basis on which
Defendants are responsible for the alleged criminal conduct of
out-of-state inmates."  Id.  Further, they assert that
"[n]owhere in [Watson's Amended] Complaint can the reader glean
sufficient facts showing Defendants improperly threatened
[Watson] or that Defendants did not have lawful authority for
their actions."  Id. at 18.  Finally, Defendants argue that
Watson has not sufficiently alleged that they violated § 45-2-
204.  Id.

Defendants also argue that "the named Defendants are not
liable for violations of Title 45 by non-named entities."  Id.
They contend that pursuant to Mont. Code Ann. § 2-9-305(6)(b),
the State, MDC, and MSP "are not liable for violations of the
criminal statutes prohibiting assaults, intimidation, or
mistreatment of prisoners committed by their employees."  Id.
at 19.  Based on the foregoing arguments, Defendants contend
they are entitled to summary judgment.

The Court finds that summary judgment is appropriate as to
§§ 45-5-201 and 45-5-203, but not § 45-5-204.  Section 45-5-

-50-

201, prohibits the offense of assault on another person, § 45-5-203 prohibits the offense of intimidation, and § 45-5-204 prohibits the mistreatment of a prisoner.  In Watson's Amended Complaint, he alleges that "while he was temporarily placed in an out-of-state facility without adequate services, he was physically assaulted and beaten by other inmates."  *Amend. Compl.* at ¶ 12.  Watson also generally alleges that "Defendants subjected [him] to constant verbal and physical abuse, threats, harassment, physical intimidation, and assaults; as well as both verbal and physical provocation by employees and other inmates which was tolerated or condoned."  Id. at ¶ 35.

Watson argues that "under the facts as they have been developed to this date, [he] can indeed demonstrate that he was intimidated, assaulted and deprived of the basic necessities contrary to the provisions" of these statutes.  *Plf.'s Brief* at 20.  However, the Court could not find any references to the record citing specific facts which support these allegations.  Watson has not presented any evidence that he was assaulted by any of the named Defendants.  He has presented some general allegations that he was assaulted in an out-of-state facility, but has not set forth any legal authority to hold the Defendants named in this lawsuit responsible for those alleged assaults.  The first element under a negligence *per se* claim is that the named Defendant violated the particular statute.  See

Prindel, ¶ 27.  That is not the case here.  Accordingly,
Watson's negligence *per se* claim for violation of § 45-5-201,
fails as a matter of law.

Regarding § 45-5-203, defining the offense of
intimidation, Watson has not cited to the Court any evidence
that the Defendants violated this statute.  Nowhere in the
record before the Court, could the Court find facts sufficient
to show that Defendants have improperly threatened Watson, nor
that Defendants did not have lawful authority for their
actions.  Accordingly, summary judgment is also appropriate as
to this claim.

Summary judgment, however, is inappropriate on Watson's
claim under § 45-5-204.  Section 45-5-204 provides in pertinent
part that:

> (1) A person commits the offense of mistreating
> prisoners if, being responsible for the care or
> custody of a prisoner, he purposely or knowingly:
> (a) assaults or otherwise injures a prisoner; (b)
> intimidates, threatens, endangers, or withholds
> reasonable necessities from the prisoner with the
> purpose to obtain a confession from him or for any
> other purpose; or (c) violates any civil right of
> a prisoner.

The Court previously found, *supra*, that there are genuine
issues of material fact that preclude summary judgment on
Watson's civil rights claim.  Accordingly, genuine issues exist
regarding whether Defendants violated this particular statute
and whether the violation was the proximate cause of Watson's

alleged damages.

Although the Court previously found that the individual Defendants are entitled to immunity on Watson's state constitutional and state law claims, Mont. Code Ann. § 2-9-305(5), provides an exception to this immunity.  Section § 2-9-305(5) provides in pertinent part that "[r]ecovery against a governmental entity . . . constitutes a complete bar to any action or recovery of damages by the claimant, . . . . <u>unless</u> the claim constitutes an exclusion provided in (b) through (d) of subsection (6)."  (Emphasis added).  Section 2-9-305(6)(b) states that:

> In a noncriminal action in which a governmental
> entity employee is a party defendant, the employee
> may not be defended or indemnified by the employer
> for any money judgments or legal expenses,
> including attorney fees, to which the employee may
> be subject as a result of the suit if a judicial
> determination is made that . . . the conduct of
> the employee constitutes a criminal offense as
> defined in Title 45, chapters 4 through 7. . . .

Accordingly, because the Court finds that there are genuine issues of material fact which preclude summary judgment on Mont. Code Ann. § 45-5-204, the individual Defendants are not entitled to immunity on this claim.

Based on the foregoing, Defendants' motion regarding Mont. Code Ann. §45-5-204 will be denied.

### 4.   Mont. Code Ann. §§ 49-1-101, *et seq.*

Defendants argue that they are entitled to summary

-53-

judgment for Watson's negligence *per se* claims for violations
of various provisions of the Montana Human Rights Act ("MHRA"),
Mont. Code Ann. § 49-1-101, *et. seq.*[13]  *Def.s' S.J. Brief* at 19-
22.  They contend that a negligence *per se* claim is not the
appropriate remedy for a violation of the MHRA.  Id. at 19.
Defendants assert that Watson has not stated a factual basis to
support his MHRA claims.  Id. at 19-21.  Finally, they argue
that Watson did not suffer any damages resulting from their
alleged negligence *per se*.  Id. at 21-22.  Watson did not
respond to this argument.

     Mont. Code Ann. § 49-2-509(7) provides that:

          The provisions of this chapter establish the
          <u>exclusive remedy</u> for acts constituting an alleged
          violation of chapter 3 or this chapter, including
          acts that may otherwise also constitute a
          violation of the discrimination provisions of
          Article II, section 4, of the Montana constitution
          or 49-1-102.  A claim or request for relief based
          upon the acts may not be entertained by a district
          court other than by the procedures specified in
          this chapter.

(Emphasis added).  "An aggrieved party therefore first must
file a discrimination claim with the Montana Human Rights
Commission before bringing an action in District Court."
<u>Dupuis v. Brd. of Trustees</u>, 2006 MT 3, ¶ 17, 330 Mont. 232, ¶
17, 128 P.3d 1010, ¶ 17.  There is no evidence to suggest that
Watson filed a claim with the Montana Human Rights Commission.

_____

     [13] Watson alleges that Defendants violated the provisions of Mont.
Code Ann. §§ 49-1-101, 49-1-102, 49-1-201, 49-2-301, 49-2-308, 49-3-203,
49-3-205, 49-3-209.

Accordingly, Watson's allegations of violations of §§ 49-1-101, 49-1-102, 49-1-201, 49-2-301, 49-2-308, 49-3-203, 49-3-205, 49-3-209, fail as a matter of law.  See also Fandrich v. Capital Ford Lincoln Mercury, 272 Mont. 425, 431-32, 901 P.2d 112, 115-16 (1995); Harrison v. Chance, 244 Mont. 215, 219-20, 797 P.2d 200, 203 (1990).

### 4.   Statute of Limitations

Defendants argue they are entitled to summary judgment "as to any and all alleged acts that do not fall within the applicable statute of limitations."  Def.s' S.J. Brief at 23-24.  They contend that Watson's Amended Complaint fails to specify the dates on which Defendants' alleged conduct occurred.  Id. at 24.  Accordingly, Defendants assert that they should be granted summary judgment on all claims that occurred prior to April 1, 1999.  Id.

Watson responds by arguing that he "agrees that the three-year statute of limitations for personal injury under § 27-2-205(1), MCA, is equally applicable to a § 1983 claim, or a State law constitutional tort claim."  Plf.'s Brief at 23.[14] However, he also makes three separate arguments that any wrongs committed since the date of his commitment to MDC are actionable and not barred by the statute of limitations.  Id.

---

[14] Watson points out that this three-year limitation encompasses all of the BMPs for which he was subjected.

at 24-25.  First, he argues that the Court should toll the
statute because of the "ongoing and continuing form of
institutional malpractice."  Id. at 24.  He contends that under
the continuing relationship doctrine "the cause of action does
not actually accrue until there is a termination of the
relationship between MSP and Watson, i.e., he is discharged or
paroled."  Second, he argues that because "Defendants have
misrepresented the actionable nature of their conduct, . . . .
These . . . misrepresentations entitle [Watson] to have all of
his claims tried on the merits, even if a portion of them may
fall outside the statutory limit."  Id.  Finally, he argues
that the statute of limitations is tolled because of
Defendants' concealment of their misconduct was fraudulent.
Id.

     Watson relies on Northern Montana Hospital v. Knight, 248
Mont. 310, 811 P.2d 1276 (1991), in support of applying the
continuing relationship doctrine to this case.  However,
Northern Montana Hospital, held that this doctrine applies to
cases involving malpractice.  248 Mont. at 316, 811 P.2d at
1279.  The Court has already granted Defendants' motion
regarding Watson's malpractice claim.  Accordingly, this
doctrine does not apply.  The Court also finds that Watson has
not provided any facts to support tolling the statute of
limitations because of Defendants' misrepresentations and/or

fraud.

Therefore, the Court will grant Defendants' motion on this issue.  Mont. Code Ann. § 27-2-204 provides for a three-year statute of limitations for general and personal injury tort actions.  For Watson's § 1983 claim, the Court is to apply the state-law period for personal-injury torts, thus three-years. See <u>City of Rancho Palos Verdes, Cal. v. Abrams</u>, 544 U.S. 113, 123 n. 5 (2005).  Accordingly, the Court will grant Defendants' motion on all claims that occurred prior to April 1, 1999.

**IV.   <u>CONCLUSION</u>**

Based on the foregoing, IT IS HEREBY ORDERED that:

(1)  Watson's Motion for Partial Summary Judgment (*Court's Doc. No. 70*) is **DENIED.**

(2)  Defendants' Motion for Summary Judgment (*Court's Doc. No. 66*) is **GRANTED** in part and **DENIED** in part.

(a)  **Federal Law and Constitutional Claims**

(i)  <u>Eighth Amendment</u>: Defendants' motion for summary judgment is **granted** as to Watson's Eighth Amendment claim as it relates to medical care.

(ii)  <u>§ 1983</u>:

(1) Defendants' motion for summary judgment is **granted** as to Watson's § 1983 claim against the State, MDC, MSP, Mahoney, Lucier, Schaefer, and Jones in their official capacities.

(2) Defendants' motion for summary judgment is **granted** as to Watson's § 1983 claim against Defendants Jones and Mahoney in their individual capacities.

(iii) <u>ADA</u>: Defendants' motion for summary judgment is **granted** as to Watson's ADA claim.

(b) **Montana State Law and Constitutional Claims**

(i)   Defendants' motion for summary judgment as to Watson's state law and constitutional claims, except Mont. Code Ann. § 45-5-204, against Mahoney, Lucier, Schaefer, and Jones is **granted.**

(ii) Defendants' motion for summary judgment as to Watson's constitutional claim under Article II, §§ 28 and 34, is **granted.**

(iii) Defendants' motion for summary judgment on Watson's negligence claim is **granted.**

(iv) <u>Negligence *Per Se*</u>:

(1) Defendants' motion for summary judgment on Watson's negligence *per se* claim for violation of ARM § 20.27.254 is **granted.**

(2) Defendants' motion for summary judgment on Watson's negligence *per se* claim for violation of Mont. Code Ann. § 46-18-225 is **granted.**

(3) Defendants' motion for summary judgment on Watson's negligence *per se* claim for violation of Mont. Code

Ann. §§ 45-5-201 and 45-5-203 is **granted.**

(4) Defendants' motion for summary judgment on Watson's negligence *per se* claims for violations of Mont. Code Ann. §§ 49-1-101, 49-1-102, 49-1-201, 49-2-301, 49-2-308, 49-3-203, 49-3-205, 49-3-209 is **granted.**

(c) **Statute of Limitations:** Defendants' motion for summary judgment on all claims that occurred prior to April 1, 1999, is **granted.**

(d) Other than as granted above, Defendants' motion for summary judgment is **denied.**

DATED this 26th day of May, 2006.

/S/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge

-59-