IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| JAMES WATSON,<br><br>            Plaintiff,<br><br>      vs.<br><br>STATE OF MONTANA, MONTANA<br>DEPARTMENT OF CORRECTIONS,<br>MONTANA STATE PRISON, WARDEN<br>MICHAEL MAHONEY, UNIT MANAGER<br>PAUL LUCIER, and DAVID<br>SCHAEFER,<br><br>            Defendants. | CV-04-16-H-CSO<br><br><br><br>**ORDER DENYING PLAINTIFF'S<br>POST-TRIAL MOTIONS** |

Before the Court are Plaintiff James Watson's ("Watson")
"Motion for Judgment as a Matter of Law Pursuant to Rule 50,
F.R.Civ.P." (*Court's Doc. No. 158*) and "Motion for a New Trial
and/or Motion to Alter or Amend Judgment Pursuant to Rule 59 and
Rule 60, F.R.Civ.P." (*Court's Doc. No. 156*).  Watson timely filed
these motions after the Clerk of Court entered Judgment (*Court's
Doc. No. 155*) following a jury verdict (*Court's Doc. No. 139*)
against him and in favor of Defendants State of Montana, Montana
Department of Corrections, Montana State Prison, Warden Michael
Mahoney, Unit Manager Paul Lucier, and David Schaefer
("Defendants").  Having reviewed the record, together with the
parties' arguments in support of their respective positions, the

Court is prepared to rule.[1]

## I.   WATSON'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

Pursuant to Rule 50(b)[2], Watson moves the Court for an Order finding in his favor and against Defendants on the issue of liability, and allowing a new trial as to damages only.  *Plf.'s Mot. for JMOL Pursuant to R. 50, F.R.Civ.P.* (hereafter "*Plf.'s JMOL Mot.*") at 1; <u>see also</u> *Plf.'s Mot. for a New Trial and/or Mot. to Alter or Amend. Judm. Pursuant to R. 59 & R. 60, F.R.Civ.P.* (hereafter "*Plf.'s R. 59 & 60 Mot.*") at 2.  In the alternative, Watson moves the Court for an Order setting a new trial.  *Plf.'s JMOL Mot.* at 2.

Under Rule 50(b), a party may renew its motion for a judgment as a matter of law ("JMOL") within ten days after entry of final judgment.  *Fed. R. Civ. Proc. 50(b)*.  A renewed JMOL under Rule 50(b) must state the grounds on which it is made.  <u>See</u>

---

[1] This matter's background is thoroughly detailed in the record, and is well-known to the parties and to the Court.  Thus, it will not be repeated here.  Also, the parties have set forth their arguments in their briefs.  The Court has considered all of the arguments, but will not repeat them herein except as necessary for full understanding of the Court's rationale.

[2] Rule 50(b) provides, in relevant part: "(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment-- and may alternatively request a new trial or join a motion for a new trial under Rule 59."

Wright and Miller, *Fed. Prac. & Proc.*, 9A Civil 2d § 2537.  "A party cannot raise arguments in its post-trial motion for [JMOL] under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion."  <u>Freund v. Nycomed Amersham</u>, 347 F.3d 752, 761 (9th Cir. 2003) (citations omitted).

In the Ninth Circuit, it is a procedural prerequisite for a party making a Rule 50(b) motion for JMOL to have made the motion at the close of the evidence and before submission of the case to the jury.  <u>Janes v. Wal-Mart Stores Inc.</u>, 279 F.3d 883, 886-87 (9th Cir. 2002).  Courts in the Ninth Circuit are to construe this requirement strictly.  <u>Id</u>. (citing <u>Farley Transp. Co. v. Santa Fe Trail Transp. Co.</u>, 786 F.2d 1342, 1346 (9th Cir. 1986) ("the requirement that [a JMOL] motion be made at the close of all the evidence is to be strictly observed")); <u>see also</u> <u>Patel v. Penman</u>, 103 F.3d 868, 878 (9th Cir. 1996) (holding that "failure to comply with Rule 50(b) precludes a challenge to the sufficiency of the evidence on appeal and that the requirement that the motion be made at the close of all evidence is to be strictly observed").  The Ninth Circuit has explained that the reason for this requirement is "because [a party] failing to make a motion for JMOL at the close of all the evidence may 'lull the opposing party into believing that the moving party has abandoned any challenge to the sufficiency of the evidence' and thereby prejudice the opposing party."  <u>Janes</u>, 279 F.3d at 886-87.

Watson made a Rule 50(a) motion at the end of his case-in-chief, which the Court denied.  Watson failed, however, to renew his motion at the close of all the evidence.  Therefore, JMOL is not available here unless an exception applies.

The Ninth Circuit has provided for a limited exception to this rule.  The Court may reverse if there is "plain error apparent on the face of the record" that, if unnoticed, would result in a "manifest miscarriage of justice."  Patel, 103 F.3d at 878.  "This exception, however, permits only extraordinarily deferential review that is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency."  Id. (emphasis included in original).

In this case, there is no plain error, because Defendants did introduce evidence to support the jury's verdict.  Accordingly, no plain error having been shown, Watson's Rule 50(b) motion for JMOL, or alternatively for a new trial, will be denied.

## II.  WATSON'S RULE 59 MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT AND RULE 60 MOTION FOR RELIEF FROM JUDGMENT

### A.  Rule 59 Standard

Under Rule 59, after a jury trial, the trial court may grant a new trial on all or some of the issues.[3]  The decision whether

---

[3] Rule 59 provides, in relevant part: (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States ....

to grant a new trial rests in the trial judge's sound discretion. Defenders of Wildlife v. Bernal, 204 F.3d 920, 928-29 (9th Cir. 2000).

Rule 59 does not expressly list the grounds for which the trial court may grant a new trial.  However, the Ninth Circuit has identified certain grounds, possibly relevant to Watson's arguments, that permit a trial judge to grant a new trial.

First, the trial court may grant a new trial where the verdict is against the clear weight of the evidence or is based on false evidence, or to prevent a miscarriage of justice. Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 819 (9th Cir. 2001); Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987).  "[A] district court may not grant a new trial simply because it would have arrived at a different verdict."  Silver Sage Partners, 251 F.3d at 819 (citation omitted).  Rather, before granting a new trial on these bases, the trial court, after having given full respect to the jury's determination, must be "left with the definite and firm conviction that a mistake has been committed [by the jury]."  Landes Const. Co., 833 F.3d at 1371-72 (citations omitted).  The Ninth Circuit has made clear that "[i]t is not the courts' place to substitute our evaluation for those of the jurors."  Union Oil Co. of Cal. v. Terrible Herbst, Inc., 331 F.3d 735, 743 (9th Cir. 2003) (reversing trial court order

granting new trial).

Second, the trial court may grant a new trial where there exists newly discovered evidence.  The party seeking a new trial on the basis of newly discovered evidence must establish that "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case."  Defenders of Wildlife, 204 F.3d at 928-29.

Third, the trial court may grant a new trial where there is evidence that improper conduct by either an attorney or the court unfairly influenced the verdict.  See e.g., Wharf v. Burlington N. Railroad Co., 60 F.3d 631, 637-38 (9th Cir. 1995) (granting new trial in case in which counsel was permitted to read to jury an untruthful stipulated fact).  For a claim of judicial misconduct to survive, the misconduct must be reflected in the record as "actual bias" on the part of the trial court, or leave the "abiding impression that the jury perceived an appearance of advocacy or partiality" by the trial judge.  Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted).

Rule 59(e) also permits the trial court to alter or amend its judgment.  The decision whether to grant a motion to alter or amend the judgment also is left to the trial judge's discretion.

<u>Zimmerman v. City of Oakland</u>, 255 F.3d 734, 737 (9th Cir. 2001).
"Amendment or alteration is appropriate under Rule 59(e) if (1)
the district court is presented with newly discovered evidence,
(2) the district court committed clear error or made an initial
decision that was manifestly unjust, or (3) there is an
intervening change in controlling law."  <u>Zimmerman</u>, 255 F.3d at
740 (citing <u>School Dist. No. 1J, Multnomah County v. ACandS,
Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993)).

**B.   Rule 60 Standard**

Under Rule 60(b), the Court may relieve a party from a final
judgment for any of the various reasons listed in the rule.
Watson appears to rely on Rule 60(b)'s so-called "catch-all"
provision for granting relief from a final judgment, *i.e.*, "any
other reason justifying relief from the operation of the
judgment."  Rule 60(b)(6).

Whether to grant relief under Rule 60(b) is left to the
trial judge's discretion.  <u>De Saracho v. Custom Food Machinery,
Inc.</u>, 206 F.3d 874, 880 (9th Cir. 2000).  "The party seeking
relief from the judgment . . . bears the burden of demonstrating
that the prerequisites for such relief are satisfied."  Steven
Baicker-McKee, et al., *Fed. Civil R. Handbook*, p. 972 (2006 ed.)
(citing <u>McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt,
Inc.</u>, 298 F.3d 586, 592 (6th Cir. 2002)).

A party may obtain relief under Rule 60(b)(6)'s "catch-all"

provision if such relief will further the interests of justice, and if the basis for relief is not already covered by Rule 60(b)(1) through (5).  <u>Lyon v. Agusta S.P.A.</u>, 252 F.3d 1078, 1088 (9th Cir. 2001) (noting that the subsections of Rule 60(b) are "mutually exclusive").  This provision is used "sparingly" to prevent manifest injustice where "extraordinary circumstances" prevented a party from taking action in a timely manner to prevent or correct an erroneous judgment.  <u>U.S. v. State of Wash.</u>, 98 F.3d 1159, 1163 (9th Cir. 1996).

**C.   <u>Analysis</u>**

It is not entirely clear from Watson's briefs precisely which parts of Rules 59 and 60 he relies upon in advancing his five arguments in support of his motion.  The Court has attempted, in addressing Watson's arguments, to address Watson's arguments in the context of the rule to which each argument most likely relates.  For all the reasons that follow, the Court concludes that Watson's motion fails.

**1.   Argument That the Jury's Conclusion Was Against the Weight of Evidence[4]**

Having considered Watson's arguments, the Court concludes that the jury's determination was not against the "clear weight" of the evidence presented at trial.  <u>Silver Sage Partners</u>, 251 F.3d at 819.  Further, the Court concludes that a "miscarriage of

---

[4] The Court notes that this argument is found in both of Watson's motions.

justice" will not result if a new trial is not ordered.  <u>Id</u>.

Watson's argument that issue preclusion compels the jury to decide this case identically to <u>Walker v. State</u>, 2003 MT 134, 316 Mont. 103, 68 P.3d 872, is unfounded.  <u>See</u> *Plf.'s Memo. in Support of JMOL Mot.* at 4-9.  The Court previously ruled when denying Watson's motion for partial summary judgment that the doctrines of collateral estoppel and/or issue preclusion do not apply to this case.  <u>See</u> *Court's Doc. No. 102* at pgs. 8-16.

Ninth Circuit authority discourages post-trial review of previously denied summary judgment motions.  The Ninth Circuit has noted:

> An appellate court will not review a denial of summary judgment after there has been a trial on the merits and an adverse jury verdict.  At that stage, the propriety of the district court's denial of summary judgment motion is an "academic question."

<u>De Saracho</u>, 206 F.3d at 877-88 (citations omitted).  The jury has rendered its decision in this case making Watson's partial summary judgment motion an "academic question."  The jury resolved the factual issues at trial in Defendants' favor.

The Court concludes that it was reasonable for the jury to determine that Defendants did not violate Watson's rights under the Eighth Amendment to the United States Constitution and Article II §§ 4 and 22 of the Montana Constitution, nor that Defendants negligently mistreated Watson.  Again, even if the Court would have arrived at a different verdict, it may not grant

a new trial on this basis.  Silver Sage Partners, 251 F.3d at
819.  Also, in light of the foregoing evidence, the Court cannot
say that a "miscarriage of justice" will occur if a new trial is
not ordered.  For these reasons, the Court denies Watson's motion
on this issue.

### 2.   Dr. Sally Johnson's Testimony

#### a.   Argument That Court Erred in Refusing to Strike Dr. Johnson's Expert Testimony

Watson argues that the Court erred in denying a motion to
strike Dr. Johnson's expert testimony because, in her direct
testimony, Dr. Johnson did not state that she has reached her
opinions based on a reasonable degree of medical certainty.
Having considered this argument, the Court is not persuaded that
Watson is entitled to a new trial to prevent a miscarriage of
justice, or that he should be relieved from the final judgment
either because he was prevented from fully and fairly presenting
his case or because such relief would further the interests of
justice.

First, Watson's motion to strike was untimely.  "An
objection must be made as soon as the ground of it is known, or
could reasonably have been known to the objector, unless some
special reason makes its postponement desirable for him and not
unfair to the offeror."  Jerden v. Amstutz, 430 F.3d 1231, 1236
(9th Cir. 2005) (quotation and internal quotation marks omitted).
This requirement "serves to ensure that the 'nature of the error

[is] called to the attention of the judge, so as to alert him [or her] to the proper course of action and *enable opposing counsel to take corrective measures*.'" Id. (quoting U.S. v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir. 1990)) (emphasis added).

Watson's counsel made a tactical decision to delay in raising this motion. After Defendants' counsel completed his direct examination of Dr. Johnson, the Court invited Plaintiff's counsel to cross-examine. Watson's counsel stated: "I have no questions of this witness, Your Honor." The Court then excused Dr. Johnson from the witness stand. See *Transcr. of June 22, 2006, Test. of Sally Johnson (Court's Doc. No. 149)* at 62:23-63:1. The Court then inquired of Plaintiff's counsel whether there was any rebuttal, and Plaintiff's counsel stated: "There is none, Your Honor." Id. at 63:6. No motions were made at this time. The Court then turned to the jury and explained as follows:

> Ladies and gentlemen, with the statements of counsel, that tells us that all of the evidence that the parties wish to present to you in the case has now been presented to you ... and so we will excuse you. I'll ask you to come back at one o'clock. And at one o'clock, then the lawyers will make their closing arguments to you. I will then instruct you on the law, and then the case will be submitted to you for your deliberation on your verdict.

Id. at 63:5-64:3. Only after Dr. Johnson and the jury had thus been excused did Plaintiff's counsel make a motion to strike Dr. Johnson's testimony. This tactical decision failed to give

Defendants the opportunity to take corrective measures.

Watson argues in his reply brief that "[a]ttorney Stephens made various objections through-out (*sic*) Dr. Johnson's testimony, and two separate objections on a <u>foundational basis</u>." *Plf.'s Reply Brief* at 7 (*emphasis in original*).  Because Stephens' objections did not make any reference to the reasonable medical certainty/probability standard, however, it did not give Defendants or the Court notice of the nature of Watson's objections.

Neither the court, nor the opposing party "may unfairly deprive parties of the opportunity to lay a foundation in support of their evidence."  <u>Jerden</u>, 430 F.3d at 1237.  Since the jury had been excused, it become too late for Defendants to resolve the alleged deficiencies effectively.  Watson's motion thus was untimely.

Even if Watson's motion was considered to be timely, Dr. Johnson's testimony was admissible under Rule 702 of the Federal Rules of Evidence.  Watson's concern that Dr. Johnson did not testify that her opinions were reached with a reasonable degree of medical certainty or probability is unfounded.

"With the Supreme Court's conclusion that the Evidence Rules overruled the Frye standard of general acceptance, <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), it seems inappropriate that federal courts should impose an inflexible

requirement that experts state opinions with a reasonable degree
of certainty.  Like the Frye test, nothing in Rule 702
specifically imposes such a requirement."  See Wright and Miller,
*Fed. Prac. & Proc.*, 29 Evid. § 6264, n. 43; see also U.S. v.
Rahm, 993 F.2d 1405, 1411 (9th Cir. 1993) ("the decision whether
to admit expert *testimony* does not rest upon the existence or
strength of an expert's *opinion*.  Rather, the key concern is
whether expert *testimony* will assist the trier of fact in drawing
its own conclusion as to a 'fact in issue'") (emphasis in
original); Schulz v. Celotex Corp., 942 F.2d 204, 208-09 (3rd
Cir. 1991) (doctor's failure to use phrase "reasonable medical
certainty" did not make his opinions inadmissible; "[T]he phrase
'with a reasonable degree of medical certainty' is a useful
shorthand expression that is helpful in forestalling challenges
to the admissibility of expert testimony.  Care must be taken,
however, to see that the incantation does not become a semantic
trap and the failure to voice it is not used as a basis for
exclusion without analysis of the testimony itself").  Dr.
Johnson thus was not required, as a threshold for admitting her
testimony, to state that her opinions were reached with a
reasonable degree of certainty.  If Watson was concerned as to
the degree to which her opinion was held, he could have chosen to
cross-examine her.  See e.g., Holbrook v. Lykes Bros. Steamship
Co., Inc., 80 F.3d 777, 785 (3rd Cir. 1996) ("The Federal Rules

of Evidence . . . do not require a particular phrase regarding the degree of certainty with which experts must form their opinions, but they certainly allow questions concerning the degree to which the opinion is held"). Watson chose to forego this right.

Accordingly, the Court's decision to deny Watson's motion to strike was not "manifestly erroneous", and thus was not inconsistent with substantial justice. Watson's motion will be denied on this issue.

> **b.    Argument That Court Erred in Not Allowing Watson to Reopen Case to Cross-Examine Dr. Johnson**

After the Court denied Watson's motion to strike Dr. Johnson's testimony, Watson's counsel moved to "reopen the Plaintiff's case and recall the witness (Dr. Johnson) as rebuttal cross-examination."   See *Johnson Transcr.* at 65:10-11.

The decision of a trial court to reopen a case is discretionary.  See Zenith Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 332-33 (1971) (holding that motion to reopen to submit additional proof is addressed to the sound discretion of trial judge); Keith v. Volpe, 858 F.2d 467, 478 (9th Cir. 1988) ("[R]eopening is within the discretion of the trial court, noting that the evidence requested should both be important as a matter preventing injustice and reasonably be available").  The Ninth Circuit has held that it was proper not to reopen a case where

-14-

the evidence sought to be introduced could have been introduced at the original trial proceedings.  See Purex Corp. v. Procter & Gamble Co., 664 F.2d 1105, 1109 (9th Cir. 1981); see also U.S. v. Kelm, 827 F.2d 1319, 1322-23 (9th Cir. 1987) (citation omitted) (holding that "[t]he court may refuse to permit an accused to reopen his case, and present additional evidence, where there is insufficient reason for the accused's failure to offer evidence at the proper time").

Here, Watson could have introduced the evidence he desired, i.e., Dr. Johnson's testimony relating to "the deprivation of human dignity through denial of basic necessities under the holding in Walker," on cross-examination.  As set forth above, the Court gave Watson full opportunity to cross-examine Dr. Johnson, which he declined.  See Johnson Transcr. at 62:23-24. The Court also gave Watson the opportunity for rebuttal, which he declined.  Id. at 63:6.  Accordingly, the Court released the jury.  Only after the Court denied Watson's motion to strike, did Watson then ask to reopen his case and recall Dr. Johnson for rebuttal cross-examination.  Id. at 65:9-11.

There were several ways Watson's attorneys could have addressed their stated concern about the testimony of Dr. Johnson.  They could have asked for a conference to make the motion to strike with the Court before cross-examining Dr. Johnson.  Or they could have cross-examined Dr. Johnson and then made the motion.  They could have asked for a conference with the

-15-

Court before the jury was excused from the courtroom.  Watson's attorneys' tactical decision to forego cross-examination and allow the witness and the jury to be excused before making the motion to strike suggests gamesmanship and is not a reason to reopen the case.

The Court's decision not to allow Watson to reopen his case was not inconsistent with substantial justice.  Accordingly, Watson's motion on this issue will be denied.

> **3.    Argument That Court Erred When it Failed to Instruct the Jury That Article II, § 4 of the Montana Constitution is a Stand-Alone Constitutional Tort**

Watson argues that the Court erred by refusing to give a separate instruction on Watson's claim under Montana Constitution Article II, § 4 that the Defendants violated his right to human dignity.  "Erroneous jury instructions, as well as failure to give adequate instructions, are bases for a new trial." Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990).  "An error in instructing the jury on a civil case requires reversal unless the error is more probably than not harmless." Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992).

The Court concludes that its refusal to separately instruct the jury on Watson's Article II, § 4 claim under the human dignity clause was not a "miscarriage of justice" requiring a new trial.  Instruction No. 21 (*Court's Doc. No. 137*, pg. 9) was not

erroneous.[5]  Watson argues that his amended Complaint separately
identified two stand-alone state constitutional claims under
Article II §§ 4 and 22.  *Plf.'s Memo. on Plf.'s R. 59 & 60 Mot.*
at 10.  He alleges that it was error for the Court to not
separately instruct the jury on each claim.  In his reply brief,
Watson argues that the Final Pretrial Order (*Court's Doc. No.
129*) also reflects that his Article II, § 4 claim was a stand-
alone tort claim.  *Plf.'s Reply Brief* at 5.  The Final Pretrial
Order, however, states in pertinent part that: "The Plaintiff's
constitutional tort claims under Article II, § 4 and § 22 of the
1972 Constitution of the State of Montana are based upon their
application in the Montana Supreme Court decision in *Walker v.
State of Montana*, 2003 MT 134, 68 P.3d 872 (MT 2003)."  *Final
Pretrial Order* at 1-2.  The Final Pretrial Order thus reflects
Watson's intention that his claims under Article II §§ 4 and 22
should be applied as they were applied in the <u>Walker</u> case.

     The Montana Supreme Court in <u>Walker</u> stated that "we read the
dignity provision of the Montana Constitution [Article II,
Section 4] together with Article II, Section 22 to provide
Montana citizens greater protections from cruel and unusual
punishment than does the federal constitution."  <u>Walker</u>, ¶ 73.
The Court held that "reading Article II, Sections 4 and 22

---

     [5] Instruction No. 21 states in pertinent part: "Under the Montana
Constitution, Watson claims Defendants . . . violated his right to human
dignity and his rights to be free from cruel and unusual punishment."

together, BMP's and the living conditions on A-block constitute
an affront to the inviolable right of human dignity possessed by
the inmate and that such punishment constitutes cruel and unusual
punishment when it exacerbates the inmate's mental health
condition." Id. at ¶ 84.

Given that Watson's Article II, §§ 4 and 22 claims are based
upon their application in Walker, and that the Montana Supreme
Court stated in Walker that these provisions should be read
together, it was not erroneous for the Court to instruct the jury
with Instruction No. 21.  Accordingly, Watson's motion on this
issue will be denied.

### 4.   Argument That Court's *Sua Sponte* Order Deeming Unanswered Request for Admission Ineffective for Lack of Timeliness Was an Error

Watson argues that it was error for the Court to enter "its
Order deeming [Watson's] notice of unanswered request for
admission untimely." *Plf.'s Memo. on Plf.'s R. 59 & 60 Mot.* at
12.  The Court is somewhat perplexed by this argument because
Watson cites no Order so holding, and the Court can find none in
the docket.  Watson presumably is referring to the Court's
general statement at the final pretrial conference that untimely
motions would be denied.

Watson's "Notice Deeming Requests for Admission Admitted"
(*Court's Doc. No. 120*)  was filed on June 7, 2006.  As indicated
in the title of the document, it was a "notice" not a "motion."

-18-

Indeed, it has been held in this Circuit that failure to timely
respond to requests for admissions results in automatic admission
of the matters requested.  See F.T.C. v. Medicor LLC., 217
F.Supp.2d 1048, 1053 (C.D.Cal. 2002) (citing Schwarzer, Tashima &
Wagstaffe, *Fed.Civ.Proc. Before Trial*, at ¶¶ 811-12 (2002)). No
motion to establish the admissions is needed because Federal Rule
of Civil Procedure 36(a) is self executing.  Id. at ¶ 812.  See
also Drennen v. Sentinel Real Estate Corp., 2005 WL 3369466, *1
(D. Ariz. 2005); Cook v. Allstate Inc. Co., 337 F.Supp.2d 1206,
1210 (C.D.Cal. 2004).

   At the final pretrial conference, held on June 7, 2006, the
Court made some preliminary observations regarding motions that
had been filed after the February 24, 2006, motions deadline.
The Court advised the parties that motions filed after the
motions deadline would be denied and any objections not timely
made would be waived.  The Court then reviewed the pending
motions and denied Watson's Motion for Sanctions (*Court's Doc.
No. 108*) and Watson's Request to Charge (*Court's Doc. No. 115*)
for being untimely.  The Court also denied Watson's Motion for
Leave to File Motion for Reconsideration (*Court's Doc. No. 111*)
for failure to follow Local Rule 7.3.  There was no mention,
however, of Watson's "Notice Deeming Requests for Admission
Admitted."

   That being said, even if the Court had denied Watson's
"Notice," it would not have been error.  Rule 36(a) provides that

-19-

"[w]ithout leave of court or written stipulation, requests for admission may not be served before the time specified in Rule 26(d)." Rule 26(d) provides that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Accordingly, requests for admission may be served only after the initial conference of the parties under Rule 26(f).

In its September 15, 2004 (*Court's Doc. No. 39*), Order Setting Preliminary Pretrial Conference, the Court ordered that "[a]ny party may commence discovery immediately upon providing its Rule 26(a)(1) Initial Disclosure to all opposing parties." The Court further ordered lead counsel for all parties to confer to consider matters listed in Fed. R. Civ. P. 26(f) on or before October 6, 2004. Watson filed these requests for admission on or about March 29, 2002, while the matter was pending in state court and before these Defendants were served with the Complaint. The requests for admission thus were filed more than 2 ½ years before the Court ordered the parties to commence their initial conference under Rule 26(f). The requests were not properly served under the Rules of this Court and thus Defendants had no duty to respond.

Accordingly, because the Court did not commit clear error or make a decision that was "manifestly unjust", Watson's motion on this issue will be denied.

III. <u>CONCLUSION</u>

-20-

Based on the foregoing, IT IS HEREBY ORDERED that:

(1) Watson's Motion for Judgment as a Matter of Law Pursuant to Rule 50, F.R.Civ.P. (*Court's Doc. No. 158*) is **DENIED.**

(2) Watson's Motion for a New Trial and/or Motion to Alter or Amend Judgment Pursuant to Rule 59 and Rule 60, F.R.Civ.P. (*Court's Doc. No. 156*) is **DENIED.**

DATED this 3rd day of October, 2006.


/S/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge